UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

HYPER QUENCY MODULA,

    Plaintiff,

v.

TRANSIT AUTHORITY OF LEXINGTON
FAYETTE URBAN COUNTY
GOVERNMENT, *d/b/a* LEXTRAN, *et al.*,

    Defendants.

Civil Action No. 5:26-cv-252-CHB

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Hyper Quency Modula is a resident of Lexington, Kentucky. Proceeding without counsel, Modula filed a complaint and an amended complaint. [R. 1]; [R, 5]. Modula also filed two motions for leave to proceed *in forma pauperis*. [R. 2]; [R. 6]. The Court has reviewed the motions and is persuaded that Modula lacks sufficient resources to pay the filing and administrative fees in this case. Thus, her request to proceed *in forma pauperis* will be granted. Having screened Modula's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court will require the defendants to respond to some of Modula's claims and will dismiss others for the reasons explained below.

## I.    BACKGROUND

"An amended complaint supersedes an earlier complaint for all purposes." *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013). Thus, Modula's amended complaint supersedes (or replaces) her original complaint and is the sole operative pleading in this case. Modula makes the following factual allegations, which the Court accepts as true for purposes of this analysis. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

- 1 -

Lextran is Lexington, Kentucky's public transit system. On the afternoon of June 4, 2026, Modula boarded a Lextran bus at the transit center in downtown Lexington. [R. 5, p. 9]. Driver Mildred Hunt began to accelerate before Modula had taken a seat, nearly causing Modula to fall. *Id.* In response, Modula told Hunt a statement to the effect of: "You have to wait for people to sit down." *Id.* Hunt stopped the bus and called her supervisor, Scott W., telling him that Modula was being argumentative. *Id.* Scott W. came to the bus and "confirmed [Modula's] statement was correct," meaning that drivers must wait for passengers to be seated before leaving. *Id.* Nevertheless, Scott W. called the Lexington Police and, according to Modula, "fabricated a disorderly-conduct characterization." *Id.* at 9–10. At some point, Lextran Safety Coordinator Chelsea Burnett came to the bus but left without taking any action. *Id.* at 10.

Also at some point, Lexington Police Officer B. Hoskins arrived at the transit center and entered the bus. *Id.* at 11. After hearing Modula's account of the events, Hoskins told Modula that she would be arrested if she did not leave. *Id.* at 12. Hoskins also declined Modula's request that he call a supervisor. *Id.* Three other Lexington Police Officers, Pauleus, Doe 1, and Doe 2, also were present but did not intervene. *Id.* at 12–13. Modula reports that she "left in fear." *Id.* at 7.

This was not the first time Modula experienced problems with Lextran employees. She alleges that Scott W. approached her in a threatening manner and called the police without a reason on March 13, 2026. *Id.* Then, on May 7, 2026, Modula boarded a Lextran bus and the driver, Drake, accelerated before Modula had an opportunity to sit down. *Id.* at 8. When Modula "informed [Drake] of the proper procedure," he accelerated again. *Id.* at 7, 16, 18.

Modula names the following defendants: Mildred Hunt, Scott W., Chelsea Burnett, Officer B. Hoskins, Officer Pauleus, Officer Doe 1, Officer Doe 2, Lextran, and the Lexington-Fayette Urban County Government ("LFUCG"). *Id.* at 7–8. Her claims are as follows: Count 1—First

Amendment retaliation (against all defendants); Count 2—Fourth Amendment unlawful seizure (against Hoskins, Pauleus, Doe 1, Doe 2, Lextran, and LFUCG); Count 3—Fourteenth Amendment equal protection and due process violations (against all defendants); Count 4—failure to train and supervise (against Lextran and LFUCG); Count 5—discrimination in violation of Title VI of the Civil Rights Act (against Lextran and LFUCG); Count 6—violations of the Kentucky Civil Rights Act (against Lextran, LFUCG, Scott W., and Hunt); Count 7-A—violations of the Americans with Disabilities Act and the Rehabilitation Act (against Lextran and LFUCG); Count 7— "Duty to Intervene" (against Burnett, Pauleus, Doe 1, and Doe 2);[1] Count 8—False Reporting (against Scott W. and Hunt); and Count 9—Excessive Force (against Hoskins, Pauleus, Doe 1, Doe 2, Lextran, and LFUCG). *Id.* at 14–16. Modula sues Hunt, Scott W., Burnett, Hoskins, Pauleus, Doe 1, and Doe 2 in both their individual and official capacities. *Id.* at 7–8. For relief, Modula seeks monetary damages and injunctive relief. *Id.* at 17–18.

## II.    LEGAL STANDARD

The Court must dismiss any claims that fail to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In reviewing Modula's claims, the Court applies the standard that governs a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*;

---

[1] As reflected here, Modula's complaint includes two Count 7s.

*see also In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Lit.*, 87 F.4th 315, 320 (6th Cir. 2023) ("[T]he complaint must allege facts supporting an inference that the defendant's liability is plausible, rather than just possible." (citation omitted)). At this stage of review, courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Additionally, *pro se* complaints are liberally construed and held to less stringent standards than those filed by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.   ANALYSIS

Several of Modula's claims will be dismissed at this time. To state a cognizable claim for relief under 42 U.S.C. § 1983, the plaintiff must allege that she was deprived of a right secured by the Constitution or other federal law and that the deprivation was caused by a person acting under color of state law. *See Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018). An official-capacity claim against a public employee is the same as a claim against the governmental entity that employees him. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). Thus, Modula's official capacity claims are duplicative of her claims against Lextran and LFUCG and will be dismissed.

The Court also will dismiss Modula's Fourth Amendment unlawful seizure claim. A seizure occurs when, "under the totality of the circumstances, a reasonable person would have believed that he or she was not free to walk away." *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004) (quoting *United States v. Saperstein*, 723 F.2d 1221, 1225 (6th Cir. 1983)). Modula does not allege any facts suggesting that she did not feel free to leave the bus or the transit center. Instead, she reports that the defendants told her to leave. No reasonable person would believe that they were not free to leave under these circumstances.

Modula's excessive force claims also will be dismissed. Modula appears to base these claims on the allegation that Defendant Hoskins donned rubber gloves and advised Modula that she would go to jail if she did not exit the bus. But even if Hoskins's statement could be construed as a threat of physical force, mere verbal threats do not amount to excessive force. *See Smigelski v. Cluley*, No. 23-3322, 2023 WL 11074139, at *4 (6th Cir. Dec. 26, 2023) (citing *Williams v. Sandel*, 433 F. App'x 353, 362 (6th Cir. 2011)). Since Modula does not allege that any defendant used physical force against her—let alone force that was unreasonable in light of the circumstances—she fails to state a claim upon which relief can be granted. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 252-53 (6th Cir. 2010) ("In determining whether there has been a violation of the Fourth Amendment [the Court] considers . . . whether an officer subjects a detainee to gratuitous violence." (citations and internal quotation marks omitted)).

Modula's claims under Title VI of the Civil Rights Act and the Kentucky Civil Rights Act will also be dismissed. Title VI prohibits discrimination based on race, color, or national origin in any program or activity that receives federal funding. *See* 42 U.S.C. § 2000d. And the Kentucky Civil Rights Act prohibits discrimination based on disability, race, color, religion, or national origin with respect to public accommodations. *See* Ky. Rev. Stat. § 344.120. These claims necessarily fail because Modula does not allege facts indicating that any defendant discriminated against her based on her membership in a protected class.

Modula's claims under the ADA and the Rehabilitation Act fail for a similar reason. Modula alleges that "[t]he deliberate escalation of a routine passenger interaction into a four-officer confrontation, directed at a known civil rights litigant with a documented psychiatric disability, constitutes discrimination in the provision of public transportation services in violation of the ADA and the Rehabilitation Act." [R. 5, p. 16]. Indeed, the ADA and Rehabilitation Act

prohibit discrimination based on disability with respect to public accommodations, *see* 42 U.S.C. § 12182(a), and programs or activities that receive federal funding, *see* 29 U.S.C. § 794(a). While Modula does indicate that she has PTSD, she does not allege facts indicating that the defendants' actions were in any way related to her diagnosis.

Despite the above, the Court will require the defendants to respond to the following claims: Count 1—First Amendment retaliation against Lextran, LFUCG, and Hunt, Scott W., Burnett, Hoskins, Pauleus, Doe 1, and Doe 2 in their individual capacities; Count 3—Fourteenth Amendment equal protection and due process against Lextran, LFUCG, and Hunt, Scott W., Burnett, Hoskins, Pauleus, Doe 1, and Doe 2 in their individual capacities; Count 4—failure to train and supervise against Lextran and LFUCG; Count 7—duty to intervene against Burnett, Pauleus, Doe 1, and Doe 2 in their individual capacities, and Count 8—false reporting against Scott W. and Hunt in their individual capacities.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1. Modula's motion for leave to proceed *in forma pauperis*, [**R. 2**], is **GRANTED**. The duplicative motion, [**R. 6**], is **DENIED** as moot. The filing and administrative fees in this case are **WAIVED**.

2. The following claims are **DISMISSED**:

   a. Count 2—unlawful seizure in violation of the Fourth Amendment;

   b. Count 5—violation of Title VI of the Civil Rights Act;

   c. Count 6—violation of the Kentucky Civil Rights Act;

   d. Count 7—violations of the ADA and Rehabilitation Act; and

  e. Count 9—excessive force in violation of the Eighth Amendment; and all claims against Hunt, Scott W., Burnett, Hoskins, Pauleus, Doe 1, and Doe 2 in their official capacities.

3. Modula may **PROCEED** with the following claims:

  a. Count 1—First Amendment retaliation against Lextran, LFUCG, and Hunt, Scott W., Burnett, Hoskins, Pauleus, Doe 1, and Doe 2 in their individual capacities;

  b. Count 3—Fourteenth Amendment due process and equal protection claims against Lextran, LFUCG, and Hunt, Scott W., Burnett, Hoskins, Pauleus, Doe 1, and Doe 2 in their individual capacities;

  c. Count 4—failure to train and supervise against Lextran and LFUCG;

  d. Count 7—"duty to intervene" against Burnett, Pauleus, Doe 1, and Doe 2 in their individual capacities; and

  e. Count 8—false reporting against Hunt and Scott W. in their individual capacities.

4. A Deputy Clerk **SHALL** prepare seven (7) Service Packets for service upon the defendants. Each Service Packet shall include:

  a. a completed summons form;

  b. the amended complaint, [**R. 5**];

  c. this Order; and

  d. a completed USM Form 285.

5. The Deputy Clerk **SHALL** send the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery on the docket.

6. The USMS **SHALL** serve the Service Packets via certified mail with return receipt requested as follows:

- 8 -

   a.  Defendants Mildred Hunt, Scott W., Chelsea Barnett, and Lextran shall be served at 200 West Loudon Avenue, Lexington, Kentucky 40508;

   b.  Defendant LFUCG shall be served at 200 East Main Street, Lexington, Kentucky 40507; and

   c.  Defendants Officer B. Hoskins and Officer Pauleus shall be served at 150 East Main Street, Lexington, Kentucky 40507.

7. Each of the served defendants **SHALL** respond to the complaint in accordance with Rule 12 of the Federal Rules of Civil Procedure.

8. Modula is **NOTIFIED** that if she does not identify the unnamed defendants—Officer Doe 1 and Officer Doe 2—within 90 days from the date that she filed her complaint, the Court will dismiss her claims against them without prejudice, consistent with Rule 4(m) of the Federal Rules of Civil Procedure.

9. Finally, Modula **MUST** immediately advise the Clerk's Office, in writing, of any change in her mailing address. If Modula fails to do so, the Court may dismiss her case.

This the 12th day of August, 2026.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY