UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| HYPER QUENCY MODULA,<br><br>Plaintiff,<br><br>v.<br><br>TRANSIT AUTHORITY OF LEXINGTON FAYETTE URBAN COUNTY GOVERNMENT, *d/b/a* LEXTRAN, *et al.*,<br><br>Defendants. | Civil Action No. 5:26-CV-252-CHB<br><br>**MEMORANDUM OPINION & ORDER** |

*** *** *** ***

Hyper Quency Modula is a resident of Lexington, Kentucky. Proceeding without counsel, Modula filed a complaint, [R. 1], and an amended complaint, [R. 5], against the Transit Authority of Lexington Fayette Urban County Government, *d/b/a* Lextran, Scott Walls, Mildred Hunt, and Chelsea Burnett (collectively, "the Lextran defendants"), and against the Lexington-Fayette Urban County Government ("LFUCG"), Officer B. Hoskins, Officer Pauleus, and Officers John/Jane Doe 1–2.[1] The Lextran defendants filed a motion to dismiss, [R. 20]; Modula responded, [R. 22]; the Lextran defendants filed a reply, [R. 24]. Modula then filed a motion for leave to file a sur-reply, [R. 26], and the Lextran defendants filed a response, [R. 27]. Having carefully

[1] Modula also filed a second amended complaint on July 28, 2026, [R. 9], without seeking the Court's leave to do so, *see* Fed. R. Civ. P. 15(a)(2). It appears that Modula filed the second amended complaint to notify the Court of a name change, as the amended pleadings are substantially similar. *See* [R. 5]; [R. 9]; *see also* [R. 9-1 (Certification of Name Change)]. In any event, Modula has not objected to the Court's or the defendants' characterization of the first amended complaint, [R. 5], as the operative pleading, *see, e.g.*, [R. 13 (order dismissing part of the first amended complaint)]; [R. 20 (Lextran defendants' motion to dismiss the remainder of the first amended complaint)]; [R. 22 (Modula's response)].

considered the matter, the Court will grant Modula's motion to file a sur-reply and grant the Lextran defendants' motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On the afternoon of June 4, 2026, Modula boarded a Lextran bus at the downtown transit center in Lexington, Kentucky. [R. 5, pp. 3, 9]. Driver Mildred Hunt accelerated before Modula sat down, nearly causing Modula to fall. *Id.* Modula calmly advised Hunt: "You have to wait for people to sit down." *Id.* Hunt then stopped the bus and called Scott Walls, a Lextran "Administrator and Supervisor." *Id.* at 3, 7, 9. Hunt told Walls that Modula had been argumentative and later authored an incident report stating that Modula had yelled. *Id.* at 8–9.

Walls boarded the bus and confirmed that drivers should not accelerate until passengers are seated. *Id.* at 3, 9. According to Modula, Walls stated that "he did not know whether the driver was lying or whether [Modula] was lying." *Id.* at 9. Walls then called the Lexington police and "fabricated a disorderly-conduct characterization." *Id.* at 3, 9–10. Specifically, Walls told the police that Modula had been "going on about it the whole time [Hunt] was driving," even though the bus traveled only two bus lengths before stopping. *Id.* at 9–10.

Before the police arrived, Modula, who was still on the bus, bid Walls "a genuine and sincere farewell," telling him to "have a nice day." *Id.* at 10. According to Modula, Walls responded: "You have a nice day! You keep that up and I can get you off of here." *Id.* Modula then "asserted her right to pursue legal action," and Walls told her, "Sue away. You lost!" *Id.* at 4, 10. Modula reports that Chelsea Burnett, alleged to be Lextran's "Safety and Training Coordinator," was also present but left without taking any action. *Id*. at 4, 8, 10.

---

[2] The factual background is taken from Modula's amended complaint, [R. 5], and is accepted as true for purposes of the motion to dismiss.

Lexington Police Officer B. Hoskins arrived on the scene, boarded the bus, and "heard [Modula's] full account." *Id.* at 4, 11. Modula subsequently left the premises after Hoskins told her she would be arrested if she did not do so. *Id.*

Modula initiated this civil action on July 9, 2026, alleging that the defendants violated various federal and state laws. The Court screened Modula's amended complaint pursuant to 28 U.S.C. 1915(e)(2)(B) and permitted the following claims against the Lextran defendants to go forward: a First Amendment retaliation claim against Lextran and Hunt, Walls, and Burnett in their individual capacities (Count 1); a Fourteenth Amendment due process and equal protection claim against Lextran and Hunt, Walls, and Burnett in their individual capacities (Count 3); a constitutional failure to train and supervise claim against Lextran (Count 4); a constitutional "duty to intervene" claim against Burnett in her individual capacity (Count 7); and a state-law false reporting claim against Hunt and Walls in their individual capacities (Count 8). *See* [R. 13, p. 7]; [R. 5, pp. 14–16].

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. At this stage of review, courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

*Pro se* complaints are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a *pro se* complaint must still contain sufficient factual content to state a plausible claim for relief. *See Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) (citing *Iqbal,* 556 U.S. at 678). Moreover, district courts "have no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford,* 542 U.S. 225, 231 (2004); *see also Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003) (observing that district courts are not "required to create [a pro se litigant's] claim for her").

## III. DISCUSSION

### A. Because Walls, Hunt, and Burnett are entitled to qualified immunity with respect to Modula's individual-capacity constitutional claims, those claims will be dismissed.

The Court begins by considering Modula's individual-capacity constitutional claims against Walls, Hunt, and Burnett (parts of Counts 1, 3, and 7). [R. 5, pp. 14–16]. Title 42 U.S.C. § 1983 allows an individual to bring an action for money damages against state or municipal actors for violations of constitutional rights. To state a viable claim under § 1983, a plaintiff must allege that (1) a person subjected the plaintiff to conduct that occurred under color of state of law and (2) the conduct deprived the plaintiff of rights, privileges, or immunities guaranteed under the United States Constitution or other federal law. *King v. City of Eastpointe*, 86 F. App'x 790, 801 (6th Cir. 2003). However, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate

the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). In their motion to dismiss, the Lextran defendants argue that Walls, Hunt, and Barnett are entitled to qualified immunity with respect to all of Modula's individual-capacity claims against them. [R. 20-1, pp. 5–6]. In response, Modula contends only that Walls is not entitled to qualified immunity on her First Amendment retaliation claim. *See* [R. 22, p. 2].

"[Officials] are entitled to a decision on qualified immunity at the earliest stage in the litigation because qualified immunity is an immunity from suit, not an immunity from liability." *Smith v. Miami Valley Hosp.*, 172 F.4th 945, 948 (6th Cir. 2026). While this decision is often reserved until the summary judgment stage or later, the defense can be raised in a motion to dismiss. *Hardy v. Jefferson Comm. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001). And dismissal is appropriate "if the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (citing *Stemler v. City of Florence*, 126 F.3d 856, 866–67 (6th Cir. 1997)).

To determine whether a government official is entitled to qualified immunity, courts must (1) decide whether the plaintiff has alleged facts that make out a violation of a constitutional right and (2) determine whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. The Court may exercise its discretion in deciding which of the two prongs should be considered first. *Id.* at 236.

"'Clearly established' means that, at the time of the [official's] conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Wesby*, 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To

determine whether a right is clearly established, this Court looks to decisions of the United States Supreme Court and the Sixth Circuit. *See NetChoice, LLC v. Skrmetti*, 191 F.4th 452, 466 (6th Cir. 2026). Viewed in the light most favorable to Modula, her allegations do not indicate that Walls violated any clearly established constitutional right.

In an effort to show that Walls's alleged conduct violated clearly established law, Modula relies on *Nieves v. Bartlett*, 587 U.S. 391 (2019). [R. 22, p. 2]. In that case, the plaintiff alleged that police arrested him in the parking lot of winter sports festival because he refused to speak with them and later attempted to intervene in their contact with a minor. *See Nieves*, 587 U.S. at 397; *Bartlett v. Nieves*, No. 15-cv-004, 2016 WL 3702952, at *1 (D. Alaska July 7, 2016). While the Supreme Court did acknowledge the general proposition that government officials cannot retaliate against individuals for engaging in protected speech, *see Nieves*, 587 U.S. at 398, clearly established law cannot be defined at such a high level of generality, *see, e.g.*, *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Although it is not necessary to find a case directly on point, "existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *accord, e.g.*, *Mockeridge v. Harvey*, 149 F.4th 826, 833 (6th Cir. 2025).

Taking all of Modula's factual allegations as true, her purported First Amendment right to criticize Hunt on a moving bus (and to be free from "retaliation" for doing so) is anything but clear. The First Amendment "does not grant individuals *carte blanche* to speak whatever, wherever, and whenever they like." *Brooklyn Branch of NAACP v. Koskinski*, 657 F. Supp. 3d 504, 525 (S.D.N.Y. 2023). And the interior of a city bus is a nonpublic forum that exists for the purpose of providing "rapid, convenient, pleasant, and inexpensive service" to its passengers. *See Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974); *see also, e.g.*, *Anderson v. Milwaukee County*, 433 F.3d 975, 979 (7th Cir. 2006) ("[T]he interior of a city-operated transit vehicle is a

nonpublic forum"). The government has broad discretion to regulate speech in such a location. *See, e.g.*, *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009) (noting that the government has broad discretion to regulate speech in nonpublic fora). While this discretion is not unlimited, Modula has not identified (and this Court cannot locate) any binding authority indicating that the First Amendment prohibits a supervisor from seeking to eject a passenger from a city bus after the driver informs the supervisor that the passenger was being disruptive. Thus, Walls is entitled to qualified immunity with respect to Modula's First Amendment retaliation claim. *See, e.g.*, *Lovell v. County of Kalamazoo*, 172 F.4th 931, 936 (6th Cir. 2026) (observing that qualified immunity may be resolved on the "clearly established" prong alone if a § 1983 plaintiff fails to identify the clearly established law that underlies her constitutional theory).

The Lextran defendants argue in their reply that Modula has forfeited her other constitutional claims against the Lextran defendants by failing to respond to their assertions of qualified immunity. [R. 24, pp. 1–2]; *see, e.g.*, *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) ("The district court correctly noted . . . that Doe abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint."). Modula contends in her sur-reply that her failure to respond to "every sub-argument" is not grounds for dismissing her claims. [R. 26-1, p. 1]. However, she still does not point to any clearly established law to support her constitutional claims. Since Modula has not satisfied her burden of showing that the defendants violated a clearly established constitutional right, her constitutional claims against the Lextran defendants in their individual capacities will be dismissed. *See, e.g.*, *Wiley v. City of Columbus*, 36 F.4th 661, 669 (6th Cir. 2022) ("The plaintiff bears the burden of showing that a right is clearly established.").

**B. Modula's related municipal liability claims will be dismissed.**

Modula seeks to hold Lextran liable for the alleged violations of her First and Fourteenth Amendment rights (parts of Counts 1, 3, and 4). [R. 5, pp. 14–15]. *Monell* claims allow for municipal liability for constitutional violations of their employees when the municipality's policy or custom led to the violation. *See, e.g.*, *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). However, "[t]here can be no *Monell* liability without an underlying constitutional violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (alteration in original) (quoting *Robertson*, 753 F.3d at 622). Since Walls, Hunt, and Burnett are entitled to qualified immunity with respect to Modula's constitutional claims, the related *Monell* claims against Lextran necessarily fail. *See, e.g.*, *id.* at 1102; *Robertson*, 753 F.3d at 622; *Reedy ex rel. D.R. v. Huron Sch. Dist.*, No. 25-1234, 2026 WL 483187, at *4 (6th Cir. Feb. 20, 2026).

**C. Modula's state-law false reporting claims against Walls and Hunt will be dismissed.**

Modula alleges that Walls and Hunt violated Kentucky Revised Statutes § 519.040(1)(d) when they submitted incident reports falsely characterizing Modula's conduct as "confrontational and argumentative" (Count 8). [R. 5, p. 16]. The defendants argue that this claim must be dismissed because there is no civil cause of action for a violation of § 519.040(1)(d). [R. 20, pp. 12–13]. Modula concedes that point but says that her "allegations may fall within [§ 519.040(1)(e)]," under which a plaintiff may recover civilly. [R. 22, pp. 5–6].

Section 519.040(1)(e) provides:

> (1) A person is guilty of falsely reporting an incident when the person . . .
>
> (e) Initiates or circulates a report or warning of an alleged occurrence or impending occurrence of a fire or other emergency under circumstances likely to cause public

> inconvenience or alarm when the person knows the information reported, conveyed, or circulated is false or baseless, and the false report results in an emergency response. . . .

Ky. Rev. Stat. § 519.040(1)(e). While Modula alleges that Walls called police based on Modula's conduct, she does not allege facts suggesting that Walls or Hunt initiated or circulated a report "of a fire or other emergency." *See* [R. 5, pp. 3–4, 7–10, 16]. Where, as here, the statute does not define a term, courts normally give the term its ordinary meaning. *See, e.g.*, *FCC v. AT&T, Inc.*, 562 U.S. 397, 403 (2011); *Keen v. Helson*, 930 F.3d 799, 802–04 (6th Cir. 2019) ("When interpreting the words of a statute, contemporaneous dictionaries are the best place to start.").

> According to Black's Law Dictionary, an emergency is
>
> 1. A sudden and serious event or an unforeseen change in circumstances that calls for immediate action to avert, control, or remedy harm.
>
> 2. An urgent need for relief or help; an exigent circumstance in which immediate assistance is needed to protect property, public health, or safety, or to lessen or avert the threat of disaster.

Black's Law Dictionary (12th ed. 2024). Moreover, "under the principle of *ejusdem generis*, [a] general term must take its meaning from the specific terms with which it appears." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 691 F.3d 821, 833 (6th Cir. 2012); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) ("[W]here general words follow specific words in statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (internal quotations marks and citation omitted)). Since "fire" is given as the illustrative example in § 519.040(1)(e), it follows that only similar circumstances constitute an emergency for purposes of the statute.

Modula also does not allege facts indicating that initiation or circulation of the alleged reports led to an emergency response. For the purposes of § 519.040, an "emergency response" is "a response by two (2) or more first responders to a reported incident that: (a) is of such an

emergent nature that the exemptions [from traffic regulations] provided under [Ky. Rev. Stat. §] 189.940 would apply; and [j]eopardizes or could jeopardize public safety[.]" Ky. Rev. Stat. § 519.010(2). Put simply, police responding to a transit center to address a simple dispute between a passenger and staff does not meet the requirements § 519.040(1)(e).

Because Modula does not allege facts upon which relief may be granted, her state-law false reporting claims against Walls and Hunt will be dismissed. *See, e.g.*, *Ashcroft*, 556 U.S. at 678.

## IV. CONCLUSION

For the reasons set out above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Modula's motion for leave to file a sur-reply, **[R. 26]**, is **GRANTED**.
2. The Lextran Defendants' motion to dismiss, **[R. 20]**, is **GRANTED**. Counts 1, 3, 4, 7, and 8 are **DISMISSED** as to Defendants Walls, Hunt, Burnett, and/or Transit Authority of Lexington Fayette Urban County Government, *d/b/a* Lextran.
3. Defendants Walls, Hunt, Burnett, and Transit Authority of Lexington Fayette Urban County Government, *d/b/a* Lextran, are **TERMINATED** as parties to this action.
4. Counts 1, 3, 4, and 7 remain pending against Defendants Hoskins, Pauleus, Does 1–2, and/or LFUCG.

This the 9th day of November, 2026.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

Claria Horn Boom

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY